SCHUYLER COUNTY.—HON. M. J. SUNDERLIN, SURRO-
GATE.—January, 1885.

## FLEET *v.* SIMMONS.

## *In the matter of the estate of* HENRY S. FLEET *deceased.*

The will of decedent contained a clause, whereby his executors were fully
empowered, authorized and directed, at any time after his decease to
sell any or all of his real or personal estate, not specifically devised or
bequeathed, with a certain exception ; also giving unto them full
power and authority to execute and acknowledge all necessary convey-
ances to carry the will into effect.  The surviving executor having
been required to give security for the faithful performance of his
duties, filed an official bond in a penalty of $11,000, with two sureties,
to whom, for the purpose of indemnifying them against loss by reason
of their recognizance, he at once conveyed a farm, and assigned a con-
tract for the purchase of another farm, both belonging to his dece-
dent's estate.  Upon an application, by persons interested, for the
revocation of the executor's letters, on the ground of misconduct in
the execution of his office, within the meaning of Code Civ. Pro.,
§ 2685,—

*Held,* that, the indemnification of the sureties in the executor's bond not
being one of the purposes contemplated by the power of sale contained
in the will, the act of the executor was illegal and improper ; to
uphold which would be to subvert the very principles upon which
such a bond is required ; that the act complained of was clearly
within the spirit of the section cited, and that the prayer of the peti-
tion should be granted.

Rogers v. Squires, 26 *Hun*, 388—distinguished.

APPLICATION, by the widow and daughter of dece-
dent, for revocation of letters testamentary issued
to George Simmons, as executor of decedent's will.
The facts are stated in the opinion.

O. P. HURD, *for petitioners.*

G. L. SMITH, *for executor.*

THE SURROGATE.—This is an application by the widow and daughter of Henry S. Fleet, deceased, to have the letters testamentary issued out of this court on July 25th, 1879, to George Simmons, one of the executors named in the will of the deceased, revoked. Albert H. Fleet, one of the executors named in the will of the deceased, and to whom, also, letters were issued, died previously to this application.

After the decease of the said Albert, upon the application of the widow (the surviving executor, Simmons, having been shown to be insolvent), an order was made by the Surrogate, requiring Simmons to give a bond in the penal sum of $22,000, for the faithful performance of his trust.   This order was modified or superseded by a further order allowing said executor to give a bond in the penal sum of $11,000, and deposit a portion of the assets of the estate, pursuant to § 2595 of the Code of Civil Procedure.   In pursuance of said last named order, the executor gave a bond in the penal sum of $11,000, which was executed by himself, and one Charles W. Barnes and one William Pellett as his sureties, which bond was accepted and approved by the Surrogate.

One of the grounds upon which the revocation of the letters is asked is that, at the time of giving said bond, the executor conveyed by deed, to Barnes and Pellett, his sureties, a farm of sixty acres belonging to the Fleet estate, and also assigned to them a certain contract belonging to said estate for the purchase of a certain other farm; that the executor received no consideration for such deed or assignment, but

that the same was made solely to secure the said Barnes and Pellett against their liability as sureties.

There is no dispute about these facts. In fact, the executor concedes them to be true, but claims that he had the legal right so to do, and that such act was within the proper discharge of his duties in the administration of the estate, and cites the case of Rogers v. Squires (26 *Hun*, 388), as an authority to sustain his act in so doing.

In the case cited, the administrator transferred certain promissory notes belonging to the estate to his sureties, to secure them for their liability on the bond they had signed for him as administrator; and the only question in that case was—whether, by such transfer, the sureties became vested with a sufficient interest in the notes, to enable them to maintain an action upon them against the maker. The court held that, by such transfer, the sureties did obtain a sufficient interest in the notes so transferred to enable them to maintain the action, but OSBORN, J., in delivering the opinion of the court, says: "He (the administrator) probably had no legal right to divert them from this purpose (*i. e.*, as assets to be collected and disposed of according to law) by any transfer of the same for his own benefit, like turning them out as security for his own personal benefit to secure his own debts, or to indemnify his friends, who had seen fit to become sureties upon the bond which the law required for his faithful performance of his duty as such administrator."

The will of the deceased contained the following clause: "*Fifth*. My executors hereinafter named

are hereby fully empowered, authorized and directed,
at any time after my decease, to sell any or all of my
real or personal estate, not hereinbefore specifically
devised or bequeathed, except the brick house and
lot where I now reside, and the household furniture
therein, and convert the same into money . . . . .
also giving and granting unto my said executors full
power and authority to execute and acknowledge all
necessary conveyances and writings to carry my will
into effect."

The power of sale contained in this provision of
the will must be held to have been given for the
benefit of the estate; and the conveying of the farm
by the executor to his sureties, to secure them for
their liability in signing his bond, was not "selling
and converting into money for the benefit of the
estate." He obtained the right and power of sale
only from the will. Without such right and power
having been thus delegated to him, he could not
legally sell and convey the real estate for any pur-
pose; and, a conveyance by the executor for the
purpose of securing the sureties on his bond not being
one of the purposes contemplated by such provision
of the will, the act was an illegal and improper one
in the discharge of his duty to the estate, and one
which may greatly tend to embarrass the estate and
plunge it into litigation, as the surety Barnes has
since died, and the title conveyed to him has now
descended to his heirs. To uphold transactions of
this character, in the administration of estates, would
be to subvert the very principles upon which bonds

VOL. III.—35

are required of executors and administrators, for the faithful performance of their trusts.

My idea of the principle upon which those having in charge the settlement of estates of deceased persons are required to give security for the faithful performance of the trust reposed in them is that the law contemplates that they are to be persons possessed, either of sufficient financial ability, or of such known integrity of character, or both, as that their friends will not hesitate to *pledge their own property* as security for the faithful and proper discharge of the trust committed to their hands.

To adopt the principle contended for by the executor's counsel would subvert this principle, and virtually compel the estate to be administered to furnish security for its executor or administrator; or, in other words, the estate would be compelled to secure itself. Upon the principle contended for, an administrator may make an agreement with his sureties that, in case they will sign his bonds, the moment his letters are granted, he will execute to them a chattel mortgage or bill of sale of every dollar of the assets of the estate, to secure them for their liability. Upon this agreement they sign his bonds, the letters are granted to him, and, as administrator, he executes and delivers the chattel mortgage or bill of sale, and virtually the entire control of and title to the assets have passed from him. He is powerless to pay debts and funeral expenses; the personal property may be compelled to lie idle and depreciate in value, and interest to accumulate upon debts owing by the estate. And when the administrator is brought to account, his excuse

for not converting the assets into money and paying off the claims against the estate, as the law requires him to do, is that, in order to give the required bond to obtain his letters, he was obliged to secure his sureties with the assets of the estate, and they have held them as security, and thus paralyzed his powers to act. It cannot be that the law will allow manipulations of an estate, so paralyzing in their effects to the interests of estates, and yet, if it can be allowed in the present case, *it must be* permitted in the case supposed.

I am aware that the executor claims that these transfers were made under the advice of counsel, and that, having acted under legal advice, it would be doing him great injustice to revoke his letters; but whether done under legal advice or of his own volition, the effect upon the estate is the same. The principle to be established is the same; and, as I am unable to find any adjudicated case to sustain an act of this kind, if such a precedent is to be established, so mischievous and dangerous to the interests of estates, it should come from a court of higher authority, after a full consideration of all the principles involved. I am satisfied, after the careful consideration I have given to this case, that the act complained of (and which act is conceded by the executor) comes clearly within the spirit, if not the letter, of § 2685 of the Code of Civil Procedure.

Section 2687 then provides that, if the objections or any of them are established to the satisfaction of the Surrogate, *he must* make a decree revoking the letters complained of.

In the view I have taken of this case, it becomes imperative upon the Surrogate to revoke the letters issued to the executor upon this ground alone, and it is rendered unnecessary to consider any of the other grounds urged for removal.

A decree must be entered, revoking the letters.